IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHARLES AMOS,<br><br>    Plaintiff,<br><br>v.<br><br>CAM PRO, INC. and JESSE BURKE,<br><br>    Defendants. | CIVIL ACTION NO. |

## COMPLAINT

Plaintiff CHARLES AMOS brings this Complaint for damages and other relief against Defendants CAM PRO, INC. and JESSE BURKE, and alleges as follows.

## NATURE OF THE ACTION

1.     This is an action for unpaid overtime wages and retaliation in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.*, ("FLSA") and state law claims for breach of contract.

## PARTIES

2.     Plaintiff CHARLES AMOS ("Plaintiff") is a citizen of North Carolina and resides in Davidson County, North Carolina.

1

3.    Defendant CAM PRO, INC. ("Cam Pro") is a Georgia company.

4.    Cam Pro's principle office is located at Post Office Box 101, Grayson, Georgia 30017.

5.    Cam Pro may be served with process by delivering copies of the Summons and this Complaint to Cam Pro's registered agent, R. Douglas Lenhardt, located at 220 College Avenue, Suite 606, Athens, Georgia 30606.

6.    Defendant JESSE BURKE ("Burke") (collectively with Cam Pro, "Defendants") is a natural person and a resident of Georgia.

7.    Burke is the Chief Executive Officer of Cam Pro.

8.    Burke may be served at his residence address of 2824 Callie Still Road, Lawrenceville, Georgia 30045 or wherever he may be found.

## JURISDICTION

9.    The Court has original jurisdiction over Plaintiff's claims for violation of the FLSA pursuant to 28 U.S.C. § 1331, because these claims raise questions of federal law.

10.    The Court has personal jurisdiction over Cam Pro, because Cam Pro is a Georgia company, and Plaintiff's claims arise out of his employment with Cam Pro.

11.    The Court has personal jurisdiction over Burke as he is a resident of Georgia.

12.    The Court has jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

13.    Plaintiff's state law claims arise out of a common nucleus of operative fact as his federal claim for unpaid overtime wages under the FLSA because the claims arise out of Defendants' wage and hour policies and practices.

## VENUE

14.    Under 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the Northern District of Georgia.

15.    Pursuant to Local Rule 3.1(B)(1)(a) and § 1391(d), venue is proper in the Atlanta Division, because the activity from which the cause of action arose took place in Gwinnett County.

## FACTUAL ALLEGATIONS IN SUPPORT OF PLAINTIFF'S CLAIM FOR FAILURE TO PAY OVERTIME

16.    While working for Defendants, Plaintiff was engaged in interstate commerce and/or in the production of goods for commerce.

17.    By way of example, Defendants operate a pressure washing company with machines and chemicals that have traveled in interstate commerce.

18.    Cam Pro qualifies as an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

19.     Burke qualifies as an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

20.     For example, Burke set the pay policies and practices for Cam Pro employees, including Plaintiff.

21.     By way of further example, Burke reviewed Plaintiff's time records each pay period and issued Plaintiff's paychecks.

22.     Plaintiff was an "employee" within the meaning of the FLSA. 29 U.S.C. § 203(e).

23.     In the three years prior to the filing of this Complaint, Defendants have been and continue to be engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA.

24.     In the three years prior to the filing of this Complaint, Defendants have been and continue to be an "employer" engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA.

25.     In the three years prior to the filing of this complaint, Defendants have employed one or more individuals who handled materials that traveled in interstate commerce.

26.     By way of example, Defendants' employees operate pressure washers that have traveled in interstate commerce.

27.   In each of the three years prior to the filing of this Complaint, Defendants have had an annual gross volume of sales made or business done in excess of $500,000.00.

28.   Defendants' annual gross volume of sales made or business done in the current calendar year will exceed $500,000.00.

29.   Plaintiff worked as an employee for Defendants beginning on May 21, 2016.

30.   Plaintiff worked for Defendants as a pressure washer and helper.

31.   Defendants paid Plaintiff at an hourly rate of $10.00 per hour.

32.   Defendants originally agreed to pay Amos at an hourly rate of $12.00 per hour.

33.   Plaintiff worked in excess of 40 hours per week in certain workweeks.

34.   Plaintiff typically arrived before his scheduled shift in the mornings to perform work on behalf of Defendants.

35.   Plaintiff typically worked past his scheduled shift to perform work on behalf of Defendants.

36.   Plaintiff also operated road cleaning vehicles as part of his job duties for Defendants.

37.   When Plaintiff operated the road cleaning vehicles, he was required to travel between different client locations.

38.    Plaintiff used an application on his phone to clock in and out of each client location when operating the road cleaning vehicles.

39.    Plaintiff was not compensated for all of his travel time between client locations while operating the road cleaning vehicles.

40.    Plaintiff was not compensated for all travel time between Defendants' office and the first client location for the day.

41.    Plaintiff was not compensated for all travel time between the last client location and the Cam Pro office to return the road cleaning vehicle.

42.    Defendants knew of Plaintiff's travel time because Plaintiff logged the time in and out for each client location.

43.    Despite knowing of Plaintiff's travel time, Defendants chose not to properly compensate him for all his time.

44.    Defendants knew Plaintiff was entitled to proper compensation for travel time, because Defendants did in fact occasionally compensate Plaintiff for some of his travel time.

45.    At all points during his employment, Plaintiff's direct supervisor was Clarence Conrad ("Conrad").

46.    Conrad reported directly to Burke.

47.    In addition to Defendants not properly compensating Plaintiff for his travel time, Defendants also required Plaintiff to perform work while not on the clock.

48.    By way of example, Defendants required Plaintiff to run errands for company supplies while off the clock.

49.    Defendants knew Plaintiff was working off the clock hours because Defendants were aware Plaintiff was running errands while not on the clock.

50.    For example, Conrad was with Plaintiff on certain occasions while Plaintiff was running errands for the company while working off the clock.

51.    Defendants knew Plaintiff was working hours in excess of 40 in certain workweeks because Defendants did on occasion pay Plaintiff for some overtime.

52.    Defendants further knew Plaintiff was working overtime, because Plaintiff complained to Defendants about being underpaid.

## FACTUAL ALLEGATIONS IN SUPPORT OF PLAINTIFF'S CLAIM FOR RETALIATION UNDER THE FLSA

53.    While Conrad was Plaintiff's supervisor, Plaintiff complained to Conrad about Plaintiff's unpaid wages.

54.    Plaintiff also complained to Burke about unpaid wages.

55.    When Plaintiff complained to Burke and Conrad about his unpaid wages, Plaintiff was engaged in protected activity under the FLSA.

56.    When Burke told Conrad about Plaintiff's complaints about unpaid wages, Conrad sent text messages to Plaintiff making threats against Plaintiff for his complaints.

57.    By way of example, after Plaintiff complained about his unpaid wages to Defendants, Conrad sent a text message to Plaintiff stating he was fired and later said that he was "seriously thinking about killing [Plaintiff] in [Plaintiff's] sleep."

58.    When Plaintiff's counsel sent a letter to Defendants notifying them of representation and identifying Plaintiff's claims, Burke called counsel's office and left a voicemail message threatening countersuit if Plaintiff sought to enforce his rights under the FLSA.

59.    Also in response to counsel's letter, Defendants replied with a written letter again threatening countersuit if Plaintiff sought to enforce his rights under the FLSA and threatening contacting law enforcement agencies.

60.    Further, Defendants made threats to Plaintiff's counsel via email indicating Burke would contact the State Bar to inform them that counsel was allegedly, "protect[ing a] wanted fugitive."

61.    After Plaintiff's counsel began discussing Plaintiff's claims with Defendants, Conrad attempted to find out where Plaintiff was currently residing in an attempt to show up at Plaintiff's residence and further his threats of retaliation.

62.    Although Plaintiff had not informed Conrad about his location, Plaintiff saw Conrad's vehicle in the parking lot of the apartment complex where Plaintiff was residing.

63.    Defendants' actions in retaliating against Plaintiff caused Plaintiff mental anguish and emotional distress.

## FACTUAL ALLEGATION IN SUPPORT OF PLAINTIFF'S CLAIMS FOR BREACH OF CONTRACT FOR HIS HOURLY RATE

64.  Defendants first employed Plaintiff to perform work as a pressure washer and operator of road cleaning vehicles on or about June 13, 2016.

65.    Plaintiff had a contract with Defendants to pay him a set hourly rate for all work performed on behalf of Defendants.

66.    Plaintiff's hours rate was $12.00.

67.    Plaintiff was only compensated at an hourly rate of $10.00.

## FACTUAL ALLEGATION IN SUPPORT OF PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT FOR ADDITIONAL UNPAID WAGES AND OUT-OF-POCKET EXPENSES

68.    Plaintiff's contract with Defendants entitled him to be compensated for all hours worked.

69.    Plaintiff worked non-overtime hours for Defendants for which Plaintiff has received no compensation.

70.    By way of example, Plaintiff was never paid his final paycheck.

71.     Additionally, Plaintiff had an agreement with Defendants that he would be reimbursed for all of the out-of-pocket expenses he incurred on behalf of Defendants.

72.     Plaintiff was not properly reimbursed for all of the out-of-pocket expenses he incurred on behalf of Defendants.

73.     For instance, Plaintiff used his own funds to purchase gasoline for Defendants' equipment, and Defendants never properly compensated Plaintiff for the gasoline.

## COUNT I: FAILURE TO PAY OVERTIME WAGES

74.     Plaintiff worked hours in excess of 40 per week during certain workweeks while employed by Defendants.

75.     However, Defendants failed to compensate Plaintiff for all hours worked, including those in excess of 40 per workweek,

76.     Defendants failed to compensate Plaintiff at not less than 1.5 time his regular rate of pay for all hours worked over 40 in certain workweeks.

77.     Defendants permitted Plaintiff to work hours in excess of 40 during certain workweeks.

78.     Defendants knew or should have known that Plaintiff worked in excess of 40 during certain workweeks.

79.     Defendants' violations of the FLSA's overtime provision, 29 U.S.C. § 207, were willful.

80.     Defendants violated the FLSA's overtime provision with reckless disregard for Plaintiff's rights.

81.     Pursuant to U.S.C. § 216(b), Defendants are liable to Plaintiff for all unpaid overtime wages, liquidated damages, attorney fees, and costs of litigation.

### COUNT II: RETALIATION UNDER THE FLSA

82.     Plaintiff engaged in statutorily-protected activity when he complained to Defendants, including his managers, about unpaid wages.

83.     Plaintiff engaged in statutorily-protected activity when he hired an attorney to help him enforce his rights under the FLSA.

84.     Plaintiff had a good-faith belief that Defendants' failure to compensate him properly for all hours worked was against the law.

85.     Defendants made physical threats of violence, threatened unfounded lawsuits against Plaintiff, made threats of contacting law enforcement agencies, and made threats to Plaintiff's counsel of contacting the State Bar after Plaintiff engaged in statutorily-protected activity.

86.     Defendants' retaliatory actions toward Plaintiff would have been materially adverse to a reasonable employee because Defendants' actions could dissuade a reasonable worker from making or supporting a charge of violation of the FLSA.

87.     Plaintiff suffered mental anguish and emotional distress as a result of Defendants' retaliatory actions.

88.     As a result of Defendants' retaliation, Plaintiff is entitled to compensatory damages, attorney fees, and costs of litigation.

## COUNT III: BREACH OF CONTRACT

89.     Defendants had a contractual obligation to pay Plaintiff as a specified hourly rate for all hours worked.

90.     Defendants failed to pay Plaintiff at the agreed-upon wage for all hours worked.

91.     Each time Defendants failed to pay Plaintiff the agreed-upon wage for all hours worked, Defendants breached their contractual agreement with Plaintiff.

92.     Defendants had a contractual obligation to reimburse Plaintiff for all of his out-of-pocket expenses.

93.     Defendants failed to pay Plaintiff for all of his out-of-pocket expenses.

94.     Each time Defendants failed to pay Plaintiff for his out-of-pocket expenses, Defendants breached their contractual agreement with Plaintiff.

95.    As a result of Defendants' breach of contract, Defendants are liable to Plaintiff for the difference paid in the agreed-upon hourly rate and the actual rate paid, for the amount of unpaid straight-time wages he worked in non-overtime weeks at the contractually-specified rate, and for Plaintiff's out-of-pocket expenses.

### DEMAND FOR JUDGMENT

Based on the allegations set forth in this Complaint, and the evidence as it is developed in this case, Plaintiff respectfully requests:

(a)    A declaratory judgment against Defendants that they violated the FLSA;

(b)    A declaration that the violation of the FLSA was willful;

(c)    A declaratory judgment against Defendants that they breached their contract with Plaintiff;

(d)    A monetary judgment against Defendants, including:

    i)      Unpaid wages and overtime,

    ii)     Liquidated damages,

    iii)    Compensatory damages,

    iv)    Unpaid straight-time wages,

    v)     Unpaid out-of-pocket expenses,

    vi)    Reasonable costs and attorney fees, and

vii)    Prejudgment interest;

(e)    Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff demands a jury trial

on all issues triable by a jury.

Respectfully submitted: January 22, 2018.


*s/William S. Cleveland*

POOLE HUFFMAN LLC                          William S. Cleveland
315 W. Ponce de Leon Ave                   Georgia Bar No. 721593
Suite 344
Decatur, Georgia 30030
Phone: (404) 373-4008
william@poolehuffman.com                   Counsel for Plaintiff